# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BESI NORTH AMERICA INC.,

               Plaintiff,

       v.

BANK OF AMERICA CORPORATION d/b/a,
BANK OF AMERICA MERRILL LYNCH,

               Defendant.

No.: 14-cv-3366

<u>ORAL ARGUMENT REQUESTED</u>

## DEFENDANT BANK OF AMERICA CORPORATION'S MEMORANDUM OF LAW IN <u>SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

**REED SMITH** LLP
Mary J. Hackett
Kerren B. Zinner
599 Lexington Avenue
New York, New York 10022
(212) 520-5400

*Attorneys for Defendant*
*Bank of America, N.A.*

Dated: June 20, 2014

# Table of Contents

**Page**

I.   PRELIMINARY STATEMENT ................................................................. 1

II.  FACTUAL ALLEGATIONS AND PLAINTIFF'S CLAIMS ........................... 3

    A.   Plaintiff and The Subject Bank Account ........................................... 3

    B.   Plaintiff's Controller Is Tricked By An Individual Impersonating Plaintiff's CEO ................................................................................................... 4

III. ARGUMENT ................................................................................................. 6

    A.   Applicable Legal Standard Under Fed. R. Civ. P. 12(b)(6).................... 6

    B.   Plaintiff's Code Claim Fails Because Plaintiff Does Not Allege that the Bank Failed to Comply With Wire Transfer Procedures Agreed to by Plaintiff and the Bank ..................................................................................................... 7

    C.   Plaintiff's Common Law Claims Are Displaced and Preempted by Article 4A .. 11

    D.   Bank of America Did Not Owe Plaintiff A Fiduciary Duty As a Matter of Law ................................................................................................. 16

    E.   Plaintiff's Tort Claims Also Are Barred By The Economic Loss Doctrine ......... 18

IV.  CONCLUSION............................................................................................. 20

# Table of Authorities

**Cases**

2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.,
  816 F. Supp. 2d 222–35 (S.D.N.Y. 2011), aff'd, 503 Fed. App'x 51, 2012 WL 5861802 (2d
  Cir. 2012) ..................................................................................................................... passim

Ahrendt v. Granite Bank,
  740 A.2d 1058 (N.H. 1999) ............................................................................................ 16, 17

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009) ................................................................................................ 6, 7, 11

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007) .................................................................................................... 6, 7, 11

Centronics Corp. v. Genicom Corp., 562 A.2d 187 (N.H. 1989) ................................................ 15

Das v. Bank of America, N.A.,
  186 Cal. App. 4th 727 (2010) ................................................................................................ 18

De Abreu v. Bank of America Corp.,
  812 F. Supp. 2d 316 (S.D.N.Y. 2011) ................................................................................... 10

Dottore v. Huntington Nat'l Bank,
  No. 1:09CV2636, 2014 WL 517504 (N.D. Ohio Feb. 10, 2014) ...................................... 10, 19

Douglas v. U.S. Bank, Nat'l Ass'n, No. 13-cv-101, 2013 WL 1890728, at *3 (D.N.H. May 6,
  2013 ....................................................................................................................................... 16

Fleet Bank v. Pine Knoll Corp.,
  290 A.D.2d 792, 736 N.Y.S.2d 737 (3d Dept. 2002) ............................................................ 17

Ironforge.com v. Paychex, Inc.,
  747 F. Supp. 2d 384(W.D.N.Y. 2010) ................................................................................... 17

Lamm v. State Street Bank & Trust Co.,
  889 F. Supp. 2d 1321 (S.D. Fla. 2012) ............................................................................ 11, 19

Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
  597 F.3d 84 (2d Cir. 2010) ..................................................................................................... 12

Manufacturers Hanover Trust Co. v. Yanakas,
  7 F.3d 310 (2d Cir. 1993) ....................................................................................................... 16

Milford-Bennington RR Co. v. Pan Am Railways, Inc.., 695 F.3d 175, 179-80 (1st Cir. 2012 .. 15

Peterboro Tool Co., Inc. Profit Sharing Plan & Trust v. People's United Bank,
  848 F. Supp. 2d 164 (D.N.H. 2012) ................................................................................. 16, 17

Plourde Sand & Gravel v. JGI Eastern, Inc.,
  917 A.2d 1250 (N.H. 2007) .................................................................................................... 19

ReAmerica, S.A. v. Wells Fargo Bank Intern.,
    577 F.3d 102 (2d Cir. 2009) ........................................................ 12

Sekerak v. National City Bank,
    342 F. Supp. 2d 701 (N.D. Ohio. 2004)........................................ 19

Shamgochian v. Bank of America, N.A.,
    No. F064231/F064480, 2013 WL 1098256 (Cal. App. 5 Dist. Mar. 18, 2013) ................ 10, 18

Sheerbonnet, Ltd. v. Am. Exp. Bank, Ltd.,
    951 F. Supp. 403 (S.D.N.Y. 1995) .............................................. 12

Travelers Cas. & Surety Co. of Amer. V. Bank of America, N.A.,
    No. 09 C 6473, 2010 WL 1325494 (N.D. Ill. Mar. 30, 2010) .................... 13

Utility Supply Co. v. AVB Bank,
    2010 WL 491506 (N.D. Ok. Nov. 30, 2010) ................................... 12

Wyle v. Lees,
    33 A.3d 1187 (N.H. 2011) ......................................................... 19

Zayed v. Associated Bank, N.A.,
    No. 13-232, 2013 WL 5487542 (D. Minn. Sept. 30, 2013)................... 10

Zengen, Inc. v. Comerica Bank,
    41 Cal. 4th 239 (2007) ...................................................... 12, 13, 14

**Statutes**

N.H. Rev. Stat. Ann. § 382-A:4A-102 ............................................... 13

N.H. Rev. Stat. Ann. § 382-A:4A-202(a) ............................................ 9

N.H. Rev. Stat. Ann. § 382-A:4A-202(b) ........................................... 15

N.H. Rev. Stat. Ann. § 382-A:4A-204 ............................................... 7

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................... 6, 17

**Regulations**

12 C.F.R § 210.25(b)(1)............................................................ 5

12 C.F.R. § 210.25(b) ............................................................. 7

Defendant Bank of America, N.A., incorrectly identified as Bank of America Corporation ("Bank of America" or "the Bank"),[1] by and through its undersigned counsel, Reed Smith LLP, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint filed by Besi North America Inc. ("Plaintiff" or "Besi").[2]

## I.    PRELIMINARY STATEMENT

In November and December 2013, two of Plaintiff's finance employees successfully initiated three wire transfers after being fraudulently duped into doing so by a third party. Plaintiff admits that its employees fully intended to initiate the wires, admits that the employees were not part of the alleged fraud, and admits that the employees initiated the wires under the belief that they were acting within the scope of their employment and for the benefit of their employer. Plaintiff does not allege that Bank of America has anyting to do with the fraud, but Plaintiff still brings this lawsuit in an improper attempt to blame Bank of America for the fraud.

According to the Complaint, in late November of 2013, Mr. David Eagan, Plaintiff's Vice President for Finance and Controller, and a member of his team, began initiating wire transfer requests to people and companies in China "wholly unknown" to Plaintiff. Plaintiff alleges that Mr. Eagan and his staff initiated these transactions at the request of an unknown person impersonating Besi's Chief Executive Officer. In total, Plaintiff sent the equivalent of $2,698,677 (the actual transfers were made in Euros) to the perpetrators of the fraud over eleven days. Plaintiff does not allege that Bank of America knew of or benefitted from the fraud.

---

[1]    Bank of America, N.A., not Bank of America Corporation, is the real party in interest with respect to all of Plaintiff's claims.

[2]    The Complaint is attached as exhibit A to the annexed Declaration of Kerren B. Zinner. For purpose of this motion, and this motion only, the factual allegations of the Complaint are presumed as true.

Plaintiff sees Bank of America as a guarantor for Plaintiff's failure to safeguard its own funds. Although Plaintiff vaguely asserts that the Bank failed to adhere to "Besi's dual authorization requirements" and "reasonable commercial standards," Plaintiff fatally does *not* allege that the Bank failed to adhere with procedures agreed to by Plaintiff and the Bank with respect to wire transfers. Specifically, Plaintiff does *not* allege that the Bank failed to process the transactions in accordance with any contract or written instructions provided by Plaintiff to the Bank.

It is well-established that whether a payment order is "authorized" for purposes of Article 4A of the Uniform Commercial Code ("Code") depends on whether the initiating party had actual or implied authority to direct the transfer per the contractual relationship between the customer and the bank. Accordingly, and contrary to Plaintiff's suggestions, the sender's internal procedures for authorizing payments, and the customer's opinion that the financial institution is in a better position than the customer to know to whom the customer is wiring funds, are not the issue. Plaintiff fails to state a claim under Article 4A because Plaintiff does not allege Bank of America failed to comply with procedures established between Plaintiff and the Bank for wire transfers. In other words, accepting the factual allegations in the Complaint as true, the Complaint fails to demonstrate that the transactions were not "authorized" as a matter of law.

In addition to its Code claim, Plaintiff also asserts common law claims for negligence, breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing. These claims, which are nothing more than Plaintiff's Code claim re-cast, are displaced by the Code because the Code is the exclusive means of determining the rights, duties and liabilities of the affected parties to an allegedly non-authorized wire transfer.

Plaintiff's breach of fiduciary claim also fails because Plaintiff pleads no facts which can overcome the well-established rule of law that a financial institution does not owe its customer a fiduciary duty except in limited circumstances not present here. Plaintiff's breach of the implied covenant of good faith and fair dealing fails because the doctrine has no application under New Hampshire law in light of the allegations in the Complaint.

Finally, the Court may also dismiss Plaintiff's two tort claims pursuant to the economic loss doctrine, because, as acknowledged by Plaintiff's Complaint, the relationship between Besi and Bank of America is contractual. As a result, even if the Code did not displace all of Plaintiff's common law claims, Plaintiff cannot try to use tort law to recover its losses.

## II. FACTUAL ALLEGATIONS AND PLAINTIFF'S CLAIMS

### A. Plaintiff and The Subject Bank Account

According to the Complaint, Plaintiff is a leading supplier of semiconductor assembly equipment with worldwide operations and a principal place of business in Salem, New Hampshire. Compl. ¶ 14. Plaintiff is a subsidiary of BE Semiconductor Industries N.V., a Dutch corporation with worldwide operations, headquartered in Duiven, the Netherlands. Id.

On or about October 24, 2005, Plaintiff's predecessor in interest, Laurier, Inc., opened a bank account with Bank of America. Compl. ¶ 18. The Complaint alleges that Besi used this account to fund the wire transfers in dispute and that this account was typically used for inter-company transfers of funds. Id. Beginning in 2005, Laurier was an authorized user of the Bank's Direct Payment Initiation system, an online service that enables clients to directly communicate wire transfer orders to the Bank. Id. at ¶ 22. On or about April 2013, the Bank migrated its customers to a new online system known as CashPro. Id. at ¶ 24. According to the Complaint, in April 2013, the Bank sent CashPro user names and passwords to Eagan and

Valerie Lanigan, a member of Eagan's staff.  Id.  Plaintiff does not allege that Eagan and Lanigan were not authorized to initiate other CashPro transactions.[3]

**B.    Plaintiff's Controller Is Tricked By An Individual Impersonating Plaintiff's CEO**

Despite being a sophisticated corporation with global operations, Plaintiff fell victim to a seemingly simple scam in late 2013.  Compl. ¶ 2.  On or around November 25, 2013, an unknown individual contacted Mr. Eagan and impersonated Besi's Chief Executive Officer.  Id.  Eagan and a member of his staff subsequently submitted to Bank of America four payment orders.  Bank of America successfully processed three of the four requests (as explained below, the first request did not go through because it contained invalid account information).  Id. ¶¶ 27-39.  Eagan did not investigate whether the individual in question was in fact Plaintiff's CEO.  According to the Complaint, all of the payment orders were directed to recipients "wholly unknown" to Besi.

Shortly after being contacted by the CEO impersonator, Eagan and/or Lanigan began submitting wire transfer requests.  On November 25, 2013, Plaintiff, using CashPro, sent an order for payment of $1,073,838 to be electronically wired to Standard Chartered Bank in Hong Kong in the name of Quick Full Group Limited.  Id. ¶ 29.  Plaintiff alleges that Quick Full Group Limited is "wholly unknown" to Besi.[4]  Id.  This transfer was rejected by the receiving bank due to an account number error.

The next day, November 26, 2013, Plaintiff, at the request of the fraudsters, used CashPro to submit an order to pay a Mr. Wen Feng Ying the same amount of $1,073,838.  Id. at

---

[3]        Indeed, Plaintiff is careful to avoid making such an allegation.  The most Plaintiff can allege is that it never "expressly" gave Eagan or Lanigan authority to issue payment orders through CashPro, Compl. ¶ 23, strongly suggesting that it tacitly gave such authority.

[4]        Plaintiff claims that China was an "unusual destination" for the payments, which should have been a warning sign for Bank of America.  Compl. ¶ 9.  Plaintiff fails to acknowledge in its Complaint that Besi's own website lists four offices in China, in addition to offices in Malaysia, South Korea, Philippines, Taiwan, and Singapore.  See http://www.besi.com/contact-us/sales-service-offices/ (last visited June 2, 2014).

¶ 31. This time, the Bank of China was the receiving bank. Plaintiff acknowledges that Mr. Wen Feng Ying also was "wholly unknown" to Besi at the time the transfer was initiated. Id. at 33. Bank of America processed the transfer to Mr. Wen Feng Ying, as requested by Plaintiff.

On Monday December 2, 2013, Plaintiff submitted a payment order for $1,074,838. This time, Plaintiff asked for funds to be sent to a Mr. Guan Qion Fen, another person whom Plaintiff also alleges is totally "unknown" to Plaintiff. Compl. ¶ 34. Plaintiff initiated this wire transfer request manually (by fax) instead of using CashPro. Plaintiff alleges that, after its request was received by the Bank, Ms. Jane Papia of Bank of America placed a telephone call to Plaintiff and that Mr. Eagan confirmed that the funds should be sent. Id. ¶ 35. The Bank processed the wire transfer request to the "unknown Guan Qion Fen". Id. ¶ 36.

On Friday December 6, 2013, Plaintiff, using CashPro, directed the Bank to send $550,000 to Stanley Industrial (HK) Ltd. Like the other beneficiaries, Stanley Industrial (HK) Ltd. was "wholly unknown" to Plaintiff. Compl. ¶ 37. The Bank processed the transaction according to Besi's request. Id.

There is no dispute that all four payment orders were submitted by Besi's Controller and/or his staff acting at his direction. Plaintiff does not allege that anyone at Besi (or Bank of America) benefitted from the fraud. Unfortunately for Plaintiff, the Controller followed all of the instructions given to him by unknown individuals impersonating Plaintiff's CEO.

In all, the Complaint alleges that Bank of America complied with Plaintiff's request to process wire transfers totaling $2,698,777.60. The Complaint asserts four claims: (1) 12 C.F.R § 210.25(b)(1) and UCC § 4A-204; (2) breach of fiduciary duty; (3) negligence; and (4) breach of the implied covenant of good faith and fair dealing. For the reasons set forth above and below, each should be dismissed, with prejudice.

# III.  ARGUMENT

## A.  Applicable Legal Standard Under Fed. R. Civ. P. 12(b)(6)

A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead enough facts to state a claim for relief that is "plausible" (as opposed to just "conceivable").  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  To survive a motion to dismiss, a complaint must contain more than "labels and conclusions;" rather, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id. at 555.  A plaintiff's showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

Even before a district court can determine whether the well-pleaded factual allegations plausibly can give rise to an entitlement to relief, it should "identify . . . pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 1940.  It is only after a district court eliminates conclusory allegations from consideration, should it "determine whether [they] plausibly give rise to an entitlement to relief."  Id. at 1950.  The plaintiff bears the burden of pleading facts sufficient to defeat all of the "more likely explanations" for defendant's conduct which were not unlawful.  Id. at 1951.

**B.    Plaintiff's Code Claim Fails Because Plaintiff Does Not Allege that the Bank Failed to Comply With Wire Transfer Procedures Agreed to by Plaintiff and the Bank**

Section 204 of Article 4A, N.H. Rev. Stat. § 382-A:4A-204 and/or the materially similar federal regulations govern Plaintiff's claim.[5]  Plaintiff asserts that it is entitled to relief under these authorities because the Complaint alleges in conclusory fashion that the wire transfers at issue were "not authorized and not effective as the order of the customer."  Compl. ¶ 46 (citing 12 C.F.R. § 210.25(b)).  This legal conclusion (or legal conclusion couched as a factual allegation) need not be accepted as true.  See Iqbal, 556 U.S. at 678.  To state a claim under Article 4A, Plaintiff must be able to allege that its Controller lacked express or implied authority pursuant to the procedures agreed to by Plaintiff and Bank of America regarding wire transfers. Plaintiff fails to satisfy Twombly/Iqbal pleading requirements in this regard.

As explained by this Court in 2011, in a decision affirmed by the Second Circuit Court of Appeals, to determine whether a payment order is "authorized," the court looks to the authorization procedures established between the sender and the receiving bank.  See 2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp., 816 F. Supp. 2d 222, 233–35 (S.D.N.Y. 2011), aff'd, 503 Fed. App'x 51, 2012 WL 5861802 (2d Cir. 2012).  To the extent the governing contracts are unambiguous with respect to processing payment orders issued to a bank, the plain meaning of the language chosen by the contracting parties must be enforced.  Id. at 233 (citing numerous cases).  These decisions are consistent with Section 201 of Article 4A, which explains

---

[5]    Plaintiff's strategic decision to not provide the Court with any of the parties' agreements obscures Mr. Eagan's actual authority.  If any of Plaintiff's claims survive this motion, Bank of America expects to be able to show that Eagan had actual or implied authority pursuant to the applicable contracts to initiate the transactions and, therefore, the transactions were authorized as a matter of law.  See N.H. Rev. Stat. § 382-A:4A-202(a) ("A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency"); Calandra, 503 Fed. App'x at 54 (holding that wire order was authorized in light of unambiguous contracts establishing who had authority to initiate payment orders).  Indeed, that is the far more plausible explanation for the Bank's conduct.  See supra n.9.

that a security governing procedures "means a procedure established by agreement of a customer and a receiving bank …." N.H. Rev. Stat. § 382-A:4A-201.

Calandra illustrates application of this simple principle. In Calandra, the plaintiff asserted a claim under Section 204 of Article 4A and claimed that individually authorized wire transfers were "not authorized" because they were submitted without majority approval as required by a trust agreement to which the bank was not a party. Id. at 233-35. In finding that the plaintiff's 4A-204 claim failed as a matter of law, the trial court held that the trust agreement to which the bank was not a party was irrelevant in determining whether the payment orders were authorized; rather, authorization of payment orders was governed by the contractual agreement between the trust and the bank. Id. at 234. The Second Circuit affirmed, finding that the bank had acted in accordance with the contracts governing the account. Calandra, 503 Fed App'x at 53. Accordingly, the Second Circuit's decision clearly establishes that the parties' agreements are critical to any Article 4A inquiry.

Plaintiff does *not* allege that the wire transfers were not authorized under the terms of an agreement between Plaintiff and the Bank. Just like the plaintiff in Calandra, Plaintiff claims that the payment orders were not authorized because they did not comply with "*Besi's* dual authorization requirements." Compl. ¶ 18 (emphasis added). However, Plaintiff does not allege that it ever established a "dual authorization" approval system with Bank of America, and Plaintiff fails to point to a contractual provision or written instruction agreed to by Plaintiff and the Bank which the Bank allegedly breached when it processed the payment orders. Accordingly, the allegation that the company Controller, Mr. Eagan, and his staff were not authorized by their superiors at Besi to submit the wire transfers at issue does not mean that the Bank processed the wire transfers in a manner inconsistent with terms agreed to by Plaintiff and

the Bank.[6] See Calandra, 816 F. Supp. 2d at 233-34 (Section 204 claim failed because plaintiff could not demonstrate that bank breached an agreement concerning the processing of wire transfer orders).

Plaintiff also alleges that the Bank "was aware" that "Besi's *internal* procedures" required two person authorization of wire transfers. Compl. ¶¶ 12 (emphasis added). However, even if this vague allegation is accepted as true, Plaintiff fails to allege that the transfers were inconsistent with the procedures that Plaintiff and the Bank agreed would be followed. Plaintiff does *not* allege that they ever completed a form, contract and/or any other document requesting that Bank of America administer the wires using dual authorization. Indeed, Plaintiff implicitly admits that there was no breach or failure by the Bank to follow authorized instructions by focusing on the fact that the Bank "instituted no agreed-upon or commercially reasonable procedure to protect against" alleged fraud risks.[7]

Plaintiff also alleges that Bank of America should have figured out that the wire transfers were being sent to a fraudster because Plaintiff allegedly did not typically send wire transfers to China, which Plaintiff claims is an "unusual" destination for its wire transfers. To the extent that Plaintiff hopes to use these allegations to state a claim under the Code, Plaintiff's argument should be rejected.

---

[6] Plaintiff's decision to not provide the Court with any of the parties' agreements obscures Mr. Eagan's actual authority. If any of Plaintiff's claims survive this motion, Bank of America expects to be able to show that Eagan had actual or implied authority pursuant to the applicable contracts to initiate the transactions and, therefore, the transactions were authorized as a matter of law. See N.H. Rev. Stat. 382-A:4A-202(a) ("A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency"); Calandra, 503 Fed. App'x at 54 (holding that wire order was authorized in light of unambiguous contracts establishing who had authority to initiate payment orders). Indeed, that is the far more plausible explanation for the Bank's conduct. See supra n.8.

[7] Consistent with the theme of blame-shifting, Plaintiff does not explain why the Bank alone had the responsibility for instituting such a procedure.

This exact issue was recently discussed in <u>Shamgochian v. Bank of America, N.A.</u>, No. F064231/F064480, 2013 WL 1098256, at *1 (Cal. App. 5 Dist. Mar. 18, 2013) (unpublished disposition), where an elderly woman was tricked into sending her money overseas to strangers. Like Plaintiff's Controller, the plaintiff soon realized she was the victim of a fraud. In rejecting the plaintiff's claims, the California Court of Appeals rejected the same argument made by Plaintiff here, namely that the defendant banks should have "suspected that plaintiff was likely being duped by a fraudulent scheme" and that banks "had a duty to investigate the transactions as to protect plaintiff". <u>Id.</u> at *1.

Accordingly, all of Plaintiff's allegations about the Bank's obligation to detect "warning signs" and "red flags" – the same "warning signs" and "red flags" which Plaintiff's Vice President for Finance and Controller did not see or ignored – are unavailing under the Code (or common law). <u>See</u> <u>e.g.</u>, <u>Calandra</u>, 503 Fed. App'x at 54 (discussing absence of duty of depository bank to safeguard funds form fiduciary's misappropriation); <u>Dottore v. Huntington Nat'l Bank</u>, No. 1:09CV2636, 2014 WL 517504, at *2 (N.D. Ohio Feb. 10, 2014) (dismissing Ponzi scheme related claims based on a bank's purported failure to adhere to "internal controls and systems designed to monitor and determine normal or expected account activity or check for suspicious transactions activity"); <u>Zayed v. Associated Bank, N.A.</u>, No. 13-232, 2013 WL 5487542, at *4 (D. Minn. Sept. 30, 2013) (rejecting an aiding and abetting claim based on the allegation that the bank had not "investigated numerous red flags" which the plaintiff contended should have placed the bank on notice that the plaintiff was being defrauded); <u>De Abreu v. Bank</u>

of America Corp., 812 F. Supp. 2d 316, 323 (S.D.N.Y. 2011) (citing numerous cases standing for proposition that "badges of fraud" did not give rise to claims against bank).[8]

Plaintiff fails to plead the facts which Twombly and Iqbal require.[9]  Regardless of what Plaintiff may allege about commercially reasonable standards and what the Bank supposedly knew about Plaintiff's own internal procedures, Plaintiff's failure to plead that the Bank failed to follow procedures agreed to by Plaintiff and the Bank requires dismissal with prejudice of Count I of the Complaint.

## C.    Plaintiff's Common Law Claims Are Displaced and Preempted by Article 4A

Plaintiff's common law claims for negligence, breach of fiduciary duty, and breach of contract (Counts II, III and IV) are displaced and preempted by Article 4A and therefore must be dismissed with prejudice.

Article 4A was enacted to "respond [] to the growing use of funds transactions and the absence of a 'comprehensive body of law' – statutory or judicial – that defined the jurisdictional

---

[8]    See also Lamm v. State Street Bank & Trust Co., 889 F. Supp. 2d 1321 (S.D. Fla. 2012) (dismissing aiding and abetting claim based on bank's failure to detect so-called red flags associated with fraudulent transactions engineered by investment advisor).

[9]    When determining the plausibility of Plaintiff's allegations as required by Twombly and Iqbal, the Court should also consider that, according to the Complaint, in April 2013 the Bank sent usernames and passwords to only two people employed by Plaintiff: Eagan and Lanigan. Compl. ¶ 24. Further, according to the Complaint, the transactions at issue presented a "highly unusual pattern in the context of Besi's transaction history," Id. ¶ 8, admitting that Plaintiff had conducted wire transfers from this account prior to the wires at issue in the Complaint. Plaintiff is careful not to reference these earlier wires except to occasionally reference "inter-company transfers," and Plaintiff does not allege that Bank of America's conduct with respect to those earlier wires – the validity of which it does not challenge – was improper in any way.  Further, if Eagan, Lanigan, or the Bank did anything different or better in connection with those earlier wires, Plaintiff surely would have included such facts in its Complaint if only to contrast the Bank's earlier "good" conduct with the Bank's allegedly "bad" conduct in connection with the wires at issue in the Complaint.  And yet such allegations are sorely lacking.  The far more plausible scenario than the one presented in the Complaint is that Bank of America processed wire transactions initiated by Eagan and/or Lanigan prior to November 2013 and Plaintiff knew and approved of Eagan and Lanigan initiating wire transfers on its behalf.  Therefore, the wires at issue in the Complaint presented nothing new or unusual; they were initiated by employees who had previously initiated wires on Plaintiff's behalf.  Although Plaintiff carefully avoids discussing this because it knows that it would be fatal to its Complaint, the Court is obligated to consider whether the Complaint alleges a claim for relief that is plausible and whether Plaintiff has pleaded facts sufficient to defeat all of the more likely lawful explanations for the Bank's conduct.  Iqbal, 129 S. Ct. at 1951.  Because Plaintiff cannot meet this burden, the Complaint should be dismissed with prejudice.

nature of a funds transfer or the rights and obligations flowing from payment orders." Sheerbonnet, Ltd. v. Am. Exp. Bank, Ltd., 951 F. Supp. 403, 407 (S.D.N.Y. 1995) (quoting Article 4A-102 Official Comment). "Article 4A rejected this piecemeal approach in favor of a more disciplined regime under which common law claims at odds with Article 4A are no longer permitted." Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 89-90 (2d Cir. 2010). The rules that emerged from the drafting of Article 4A "are intended to be the *exclusive* means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article." See ReAmerica, S.A. v. Wells Fargo Bank Intern., 577 F.3d 102, 106 (2d Cir. 2009) (quoting the Official Comment to Section 4A-102).

The Second Circuit has noted that the critical inquiry in determining whether a common law claim is displaced by Article 4A is "whether [Article 4A's] provisions protect against the type of underlying injury or misconduct alleged in a claim." Ma, 597 F.3d at 89-90. The Second Circuit and this Court have made clear that common law claims relating to unauthorized wire transfers are encompassed by Article 4A and therefore displaced:

> Article 4A's text strongly suggests that it applies to claims asserting the existence of unauthorized wire transfers regardless of what the claims may be called and, in any event, the accompanying commentary is pellucid on the issue.

Id. (finding negligence, breach of fiduciary duty and breach of contract good faith claims all related to alleged unauthorized funds transfers under Article 4A); see Calandra, 816 F. Supp. at 236 ("Any common law claims about the existence of unauthorized wire transfers [] and the mechanics of how those transactions were conducted, fall within the regime of Article 4-A[.]").

Numerous other courts have held similarly. See Utility Supply Co. v. AVB Bank, 2010 WL 491506, at *4 (N.D. Ok. Nov. 30, 2010) (finding Plaintiff's negligence claim based on bank's handling of payment orders from unauthorized senders fell within scope of Article 4A); Zengen, Inc. v. Comerica Bank, 41 Cal. 4th 239, 254-55 (2007) (finding common law claims

relating to unauthorized wire transfers were displaced by Article 4A); Travelers Cas. & Surety

Co. of Amer. V. Bank of America, N.A., No. 09 C 6473, 2010 WL 1325494, at *3 (N.D. Ill.

Mar. 30, 2010) (breach of implied warranty claim related to fraudulent wire transfers were

displaced by Article 4A).

The discussion of the issue in Zengen is particularly insightful and comprehensive:

The Code Comment to section 4A–102, adopted in California as 11102, states: "In the drafting of Article 4A [i.e., division 11], a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment. A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles. In the drafting of these rules, a critical consideration was that the various parties to funds transfers need to be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately. This consideration is particularly important given the very large amounts of money that are involved in funds transfers.
"Funds transfers involve competing interests—those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. *The rules* that emerged represent a careful and delicate balancing of those interests and *are intended to be the exclusive means* of determining the rights, duties and liabilities of the affected parties *in any situation covered by particular provisions* of the Article. *Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.*" (citation omitted).
Zengen, 41 Cal. 4th at 252.

Like California, New Hampshire adopted section 102 of Article 4A, including the

Comment quoted above, verbatim. See N.H. Rev. Stat. § 382-A:4A-102 and Comment thereto.

Accordingly, unless Plaintiff can show that its claims do not relate to "any situation covered by

particular provisions" of Article 4A – and Plaintiff cannot – all of Plaintiff's common law claims

are displaced by the Code. Id.

All of Plaintiff's common law claims are, at their core, directly related to the alleged unauthorized fund transfers. As such, Plaintiff's common law claims cannot escape the purview of Article 4A and fail as a matter of law. First, as is apparent from the pleadings, Plaintiff's negligence claim is premised on conduct that is regulated by Article 4A-202. In support of its negligence claim, Plaintiff contends that Bank of America failed to (1) properly monitor the payment orders to detect and prevent fraud, and (2) seek confirmation from Besi that the payment orders were authorized. Compl. ¶¶ 56-57. These allegations, which Plaintiff asserts in support of its negligence claim, mirror the allegations Plaintiff asserts in support of its Article 4A claim. See id. ¶¶ 41-46. Accordingly, Plaintiff's negligence claim is displaced by Article 4A and should be dismissed as a matter of law.

For the same reasons, Plaintiff's common law breach of fiduciary duty claim is displaced by Article 4A and should also be dismissed. Plaintiff alleges, in pertinent part, that Bank of America:

> breached its fiduciary duty by failing to follow in good faith any appropriate security procedures with regard to the November 25, November 26, December 2, and December 6, 2013 payment orders, verify the authenticity of the payment orders, and/or seek confirmation from Besi that the funds transfers had been duly authorized.

Compl. ¶ 50. Again, the foregoing allegations mirror the allegations that provide the basis for Plaintiff's Article 4A claim. See id. ¶ 44. Moreover, as discussed above in Section I, Article 4A-202(a) addresses when a payment order is "authorized" and Article 4A-202(b) addresses when a security procedure is commercially reasonable. Therefore, because the situations giving rise to Plaintiff's breach of fiduciary duty claim are covered by particular provisions of Article 4A, Article 4A is the exclusive means for determining the rights, duties, and liabilities of Plaintiff and Bank of America.

Plaintiff's contract claim for breach of the implied covenant of good faith and fair dealing is also displaced. Plaintiff claims that "[b]y ignoring, or failing to notice or act upon, the red flags surrounding the November 25 – December 6 payment orders and transfers . . . , [Bank of America] breached its duty to act in good faith and observe reasonable standards of fair dealing." Compl. ¶¶ 60-61. Not only do the foregoing allegations fail to include anything other than mere conclusions of law, they also are, at their core, related to the allegedly unauthorized payment orders. Most importantly for displacement purposes, the concepts of "good faith" and "reasonable commercial standards" are addressed in Article 4A and cannot serve as the basis for a common law claim. See N.H. Rev. Stat. 382-A:4A-202(b), (c).

Moreover, Count IV also fails as a matter of state law. Plaintiff alleges that the Bank breached its covenant of good faith by purportedly ignoring the so-called "red flags" (which Plaintiff acknowledges it ignored or did not detect). Compl. ¶ 60. This allegation fails to state a claim under New Hampshire law. The seminal New Hampshire case on the doctrine is Centronics Corp. v. Genicom Corp., 562 A.2d 187 (N.H. 1989), and Centronics makes clear that the doctrine is not a device to be used to re-write or modify an express agreement. The doctrine creates a duty to act in good faith where "under an agreement that appears by word and silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value." Centronics, 562 A.2d at 193. A party only states a claim under the donctrine if it can allege that its counterparty failed to observe reasonable limits in exercising that discretion. See Milford-Bennington RR Co. v. Pan Am Railways, Inc.., 695 F.3d 175, 179-80 (1st Cir. 2012 (explaining application of Centronics); Douglas v. U.S. Bank, Nat'l Ass'n, No. 13-cv-101, 2013 WL 1890728, at *3 (D.N.H. May 6,

2013 (following Centronics and emphasizing that doctrine is not intended to allow contracts to be rewritten).

Plaintiff's "red flags" allegation (Compl. ¶ 60) does not implicate the discretion requirement required by Centronics and, therefore, Plaintiff does not state a claim under New Hampshire law. Inded, Indeed, Plaintiff never identifies an express contract between itself and the Bank, much less a contract through which discretion was afforded. Accordingly, Count IV can be dismissed with prejudice even if it is not displaced by the Code.

In sum, each of Plaintiff's common law claims is nothing more than an attempt to re-cast Plaintiff's Article 4A claim. According to the precedent cited above, Plaintiff's common law claims are displaced by the Code and should be dismissed.

## D.     Bank of America Did Not Owe Plaintiff A Fiduciary Duty As a Matter of Law

Plaintiff's breach of fiduciary duty claim also fails as a matter of law because Bank of America and Plaintiff are not in a fiduciary relationship. Under New Hampshire law, "[a]s a general rule, the relationship between a bank and customer is not a fiduciary one unless the law otherwise specifies." Peterboro Tool Co., Inc. Profit Sharing Plan & Trust v. People's United Bank, 848 F. Supp. 2d 164, 170 (D.N.H. 2012) (quoting Ahrendt v. Granite Bank, 740 A.2d 1058 (N.H. 1999). "The relationship between an ordinary depositor and a bank is contractual in nature and does not create fiduciary obligations." Id. Moreover, "[t]he mere fact that a relationship is long-standing does not create a fiduciary duty." Id. (citing Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 318 (2d Cir. 1993)).

In Ahrendt, the New Hampshire Supreme Court rejected a fiduciary duty claim brought by a bank's customer after a third party, ostensibly with the customer's authority, withdrew funds from her money market account. The Supreme Court held there was no fiduciary duty

under the circumstances, noting that the fact that the bank held itself out as a reputable financial institution did not give rise to a fiduciary duty claim where there was no allegation of a contract that established the existence of a fiduciary duty.  <u>Ahrendt</u>, 740 A.2d at 1062.  Similarly, in <u>Peterboro Tool</u>, the District Court held that the bank did not have a fiduciary duty to protect its customers after fraudulent withdrawals were made by a trustee.  <u>Peterboro Tool</u>, 848 F. Supp. 2d at 169 (dismissing fiduciary duty claim pursuant to Rule 12(b)(6) where there were no allegations of a special or fiduciary relationship and holding bank did not have obligation to protect customer from trustee's misappropriation of funds).[10]

Plaintiff's bald assertions and conclusory statements about its "relationship of trust and confidence" with Bank of America need not be accepted and are not enough to overcome the well-established rule that the bank-customer relationship does not give rise to a fiduciary relationship.  Compl. ¶ 50.  The Complaint includes vague allegations about the "advisory services" which Bank of America provides to "its customers," presumably in an attempt to generate a fiduciary duty where one does not exist under prevailing law.  However, "the bank-customer relationship provides for no greater responsibilities than those expressly stated in the banking agreements."  <u>Calandra,</u> 816 F. Supp. 2d at 237 (rejecting claim that bank breached a duty to investigate suspicious behavior).  As noted by the Second Circuit in <u>Calandra,</u> it is well-

---

[10]     If for some reason the Court determines that New York law applies to Plaintiff's common law claims, the result is the same. "[T]here typically is no fiduciary relationship between the borrower and the bank". <u>Fleet Bank v. Pine Knoll Corp.</u>, 290 A.D.2d 792, 736 N.Y.S.2d 737, 741 (3d Dept. 2002). A special relationship that will give rise to a fiduciary duty "requires a closer degree of trust than an ordinary business relationship." <u>Id</u>. <u>See also</u> <u>Ironforge.com v. Paychex, Inc.</u>, 747 F. Supp. 2d 384, 395 (W.D.N.Y. 2010) (dismissing fiduciary duty claim pursuant to Rule 12(b)(6) motion because relationship was defined by contract and contract did not establish a fiduciary duty).

established that a bank does not have a duty to monitor account usage even when the account is a fiduciary account (which this was not).[11] Id. at 239 (citing numerous cases).

Plaintiff's blanket conclusory statements about an alleged "advisory role" does nothing to distinguish the legal relationship between Besi and Bank of America from other bank-customer relationships, which generally do not give rise to a fiduciary relationship under similar circumstances. See Das v. Bank of America, N.A., 186 Cal. App. 4th 727, 742 (2010) (dismissing breach of fiduciary duty claim in connection with plaintiff who was duped by fraudster where plaintiff could not plead or show that bank undertook a special fiduciary duty toward plaintiff); Shamgochian, 2013 WL 1098256, at *7 (citing Das and dismissing fiduciary duty claim because "the bank-depositor relationship is not fiduciary in character and no facts were alleged to indicate that the Banks undertook any special fiduciary obligation toward plaintiff"). Accordingly, even if Plaintiff's fiduciary duty claim is not displaced by the Code, it fails as a matter of state law.

**E.    Plaintiff's Tort Claims Also Are Barred By The Economic Loss Doctrine**

As explained above, Plaintiff fails to adequately allege the nature of the contract allegedly breached by Bank of America. Nonetheless, there does not appear to be any dispute that there is a contractual relationship between Plaintiff the Bank. For example, in paragraph 60 of the Complaint, Plaintiff alleges that Bank of America and Besi (and its predecessor in interest) have been in a contractual banking relationship "since at least 2005."[12] Compl. ¶ 60. As a result, the economic loss doctrine also precludes Plaintiff from pursuing common law tort claims against the Bank.

---

[11]    Indeed, if the Court does not hold that Plaintiff's negligence claim is displaced by the Code, the claim should still be dismissed for failing to allege a breach of a legal duty. Calandra, 816 F. Supp. 2d at 239.

[12]    Plaintiff's assertion of a claim for breach of the implied covenant of good faith and fair dealing which attaches to contracts also is an acknowledgment that Plaintiff and the Bank have a contractual relationship.

Under New Hampshire law, "where a plaintiff may recover economic loss under contract, generally a cause of action in tort for purely economic loss will not lie." Plourde Sand & Gravel v. JGI Eastern, Inc., 917 A.2d 1250, 1253 (N.H. 2007). As the explained by the New Hampshire Supreme Court:

> [t]he economic loss doctrine is based on an understanding that contract law . . . is better suited than tort law for dealing with purely economic loss in the commercial arena. If a contracting party is permitted to sue in tort when a transaction does not work out as expected, that party is in effect rewriting the agreement to obtain a benefit that was not part of the bargain.

Id. As such, under New Hampshire law, "the rule precludes a harmed contracting party from recovering in tort unless he is owed an independent duty of care outside the terms of the contract." Wyle v. Lees, 33 A.3d 1187, 1191 (N.H. 2011).

Therefore, even if Plaintiff's negligence and breach of fiduciary duty claims survive all of the other arguments set forth above, New Hampshire law prevents Plaintiff from using tort law to try to recover its economic losses. Under analogous circumstances, courts have applied the economic loss doctrine to dismiss similar claims against financial institutions. See Dottore, 2014 WL 517504, at *3 (economic loss doctrine precluded fraud claims against bank based on failure to detect Ponzi scheme because parties' relationship was based on contract); Lamm, 889 F. Supp. 2d at 1331 (economic loss doctrine barred claims based on failure to detect fraudulent transactions); Sekerak v. National City Bank, 342 F. Supp. 2d 701, 715 (N.D. Ohio. 2004) (economic loss doctrine barred tort claim relating to fraudulent wire transfers). Based on the foregoing, Plaintiff is barred from recovering economic damages in tort and Counts II and III can be dismissed on this alternative ground.

# IV.    CONCLUSION

For the foregoing reasons, this Court should grant Bank of America's Motion to Dismiss and dismiss the Complaint with prejudice.

Dated: June 20, 2014

Respectfully submitted,

**REED SMITH LLP**

By: _____
Mary J. Hackett
Kerren B. Zinner
599 Lexington Avenue
New York, New York 10022
(212) 520-5400

*Attorneys for Defendant*
*Bank of America, N.A.*